

**Avery S. Mehlman**
**Partner**
Phone: 212.592.5985
Fax: 212.545.3424
amehlman@herrick.com

August 23, 2021

**Via ECF**

Judge Katherine Polk Failla
United States District Court
Southern District of New York
40 Foley Square, Room 2103
New York, New York 10007

Re: *Moshe Chaim Panzer v. Joel Epstein*, Case No. 1:21-cv-06886

Dear Judge Failla:

We write in response to Respondent's unsolicited August 23, 2021 letter regarding the purported scope of 9 U.S.C. § 202 and, specifically, whether the statue "requires the Court to look beyond the parties' 'agreement' to the parties' 'relationship.'" Respondent presents the Court with a distinction without a difference. The agreement provides the rights of the shareholders in the management of the Company. The relationship between the parties is contractual, and the situs of that contractual relationship is unquestionably domestic. The parties are New York residents in contractual relationship governed by New York law regarding the management of a New York corporation with a principal place of business in New Jersey. This is therefore a wholly domestic dispute.

To launder an international dimension into the parties' relationship, Respondent harps on the fact that the *Company*, like many American businesses, commits significant expenditures abroad. These expenditures, a so-called "super majority" of the [Company's] total purchases, somehow transform the relationship *between the parties* into a foreign relationship that involves property located abroad or envisages performance abroad. But to accept this logic, the Court would have to disregard the corporate form and view the Company—as the entity making these foreign purchases—as an alter ego of the parties. For this, Respondent provides no legal support.

Remarkably, Respondent provides a ***heavily*** edited excerpt from *Nomanbhoy v. Vahanvaty*, No. 11 C 2456, 2011 WL 6736052 (N.D. Ill. Dec. 21, 2011)—a case that was *dismissed for lack of subject matter jurisdiction*—as support for the exercise of jurisdiction here. The excerpt from Respondent's letter bares little resemblance to actual text.

> *Compare*: The court held: "The plain language of section 202" directs the court to "focus . . . not on the [parties' agreement] alone, but rather the legal relationship in which the arbitration . . . arises. . . . Therefore[,] the relationship at issue is the parties' ownership and operation of [the underlying company.]" Id. at *5 (internal quotation marks and citation omitted).



System.Object[]





ECF No. 10 at 1.

> *With*: The plain language of section 202, however, directs courts to focus **on the "legal relationship" that the arbitration agreement or award "aris [es] out of." *See Access Info.*, 2010 WL 4642045, at *4 ("The focus of whether a commercial relationship has a reasonable relation to a foreign state is** not on the Franchise Agreement alone, but rather the 'legal relationship in which the arbitration **or arbitral award** arises.' " (quoting ENSCO, 370 F.Supp.2d at 601)). Therefore the relationship at issue is the parties' ownership and operation of Dyna Care, **which is completely domestic.**

*Nomanbhoy*, 2011 WL 6736052, at *5 (emphasis supplied to highlight the portions of the text omitted by Respondent).

Crucially, Respondent omits that that "legal relationship" referenced in § 202 *arises out of* an arbitration agreement or an arbitration award, and that, because the relationship in *Nomanbhoy* was "the parties' ownership and operation of" an Illinois business, it was considered "completely domestic." Thus, Respondent's attempt to draw a sharp distinction between the parties' contract and legal relationship falls flat.

Next, Respondent relies on *Amato v. KPMG LLP*, 433 F. Supp. 2d 460 (M.D. Pa. 2006), *order vacated in part on reconsideration*, No. 06CV39, 2006 WL 2376245 (M.D. Pa. Aug. 14, 2006), which arises out of an entirely different factual circumstance. *Amato* was a fraud case brought by the victim of an alleged fraud perpetrated by several multinational financial institutions and a multinational law firm involving the plaintiff's "participation in an investment strategy known as ***Offshore*** Portfolio Investment Strategy" *Id.* at 464 (emphasis supplied). Specifically, the execution of this strategy—the purpose of which was to harvest tax losses abroad—required the purchase of German securities on German security exchanges and involved loans made by a German financial institution. *Id.* at 478. *Amato*, therefore, provides no useful guidance to a dispute over the management of a domestic cabinetry company.

Instead, the Court should rely on cases, such as *Nomabhoy*, that relate to the management of domestic business or the performance under domestic employment contracts.[1] *See, e.g.*, *Jones v. Sea Tow Servs. Freeport NY Inc.*, 30 F.3d 360, 366 (2d Cir. 1994) ("Neither the salvor-casualty relationship, nor the LOF agreement relationship has any reasonable relation with England in this case. The purported salvage operation took place just off the coast of the United States, and the LOF was presented to Mrs. Jones for signature in the United States."); *Matabang v. Carnival*

[1] The Shareholder Agreement also governs the parties' employment by the Company, including their job titles, responsibilities, and salaries. *See* ECF No. 4-1 at § 2.06.





*Corp.*, 630 F. Supp. 2d 1361, 1366 (S.D. Fla. 2009) (the legal relationship arising out of an employment contract for cruise-ship employee did not contemplate performance abroad even thought the employee spent 80-85% of his time in Bahamian waters); *Wilson v. Lignotock U.S.A., Inc.*, 709 F. Supp. 797, 799 (E.D. Mich. 1989) ("Although it was plaintiff's duty to sell products manufactured abroad, all sales contracts generated by plaintiff were made in Michigan. The products sold by plaintiff were eventually installed in the United States in vehicles sold in the United States. Plaintiff's trips to Europe were incidental to the performance of plaintiff's contractual duty of selling Lignotock products to U.S. automobile manufacturers.").

Simply put, Respondent has not presented any authority supporting the exercise of federal jurisdiction over this special proceeding. This dispute in no way implicates the New York Convention and to hold otherwise would render nearly every commercial arbitration a federal matter, as almost all modern businesses are in some capacity involved in international commerce. This outcome is not supported by the plain language of the statute, the cases interpreting it, or the intention of the legislature that passed it. *Nomanbhoy*, 2011 WL 6736052, at *4 ("When Congress passed implementing legislation for the Convention, it added the foreign element requirement in section 202 to prevent the displacement of domestic arbitration laws in disputes that were not truly international."). Accordingly, this proceeding should be swiftly remanded to state court, so that Petitioner's application for a temporary restraining order may be considered and entered, together with an award for costs, attorneys' fees, other expenses, and any other sanction that this Court deems just and proper.

We thank the Court for its attention to this matter.

Respectfully submitted,

*/s/ Avery S. Mehlman*

Avery S. Mehlman