UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MOSHE CHAIM PANZER,

                            Plaintiff,

                  -v.-

JOEL EPSTEIN,

                            Defendant.

21 Civ. 6886 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

        The falling out between Plaintiff and Defendant, two partners in a

hardwood cabinetry business, spawned an arbitration proceeding and related

litigation that, for a brief time, was in this Court.  After the Court remanded the

litigation back to state court, Plaintiff sought attorneys' fees and costs

pursuant to 28 U.S.C. § 1447(c).  For the reasons set forth in the remainder of

this Opinion, the Court denies Plaintiff's request.

## BACKGROUND[1]

### A.    Factual Background

        During the relevant time period, Plaintiff Moshe Chaim Panzer and

Defendant Joel Epstein were partners in Fabuwood Cabinetry Corp.

---

[1]    The Court sources its facts to Defendant's Notice of Removal ("Notice" (Dkt. #4)) and the
       exhibits thereto, including Plaintiff's Verified Petition for a Permanent Stay of
       Arbitration Pursuant to CPLR 7503 ("Petition" (Dkt. #4-1)).  The Court also takes
       judicial notice of certain filings in the state case, *Panzer* v. *Epstein*, Index
       No. 654909/2021 (Sup. Ct. N.Y. County).  *See Liberty Mut. Ins. Co.* v. *Rotches Pork
       Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992) ("A court may take judicial notice of a
       document filed in another court 'not for the truth of the matters asserted in the other
       litigation, but rather to establish the fact of such litigation and related filings.'" (internal
       quotation and citation omitted)); *One West Bank, FSB* v. *Levine*, No. 16 Civ. 3126 (SJF)
       (AKT), 2016 WL 3512200, *1, n.1 (E.D.N.Y. Jun. 22, 2016) (taking judicial notice of
       information maintained on public electronic docket for the New York State Unified
       Court System).  Reflecting the difference in their designations in state and federal court,

("Fabuwood"), a company that imports and exports kitchen cabinets.  (Petition

¶ 2).  According to Plaintiff, Defendant schemed to wrest control of Fabuwood

from Plaintiff, its majority shareholder, as Plaintiff worked through several

personal crises.  (*Id.* at ¶¶ 2-3, 16-18).  To that end, in February 2021,

Defendant sent both a letter to Plaintiff announcing his withdrawal from the

business relationship and a buyout notice that, according to Plaintiff, was

plainly violative of the operative Shareholders Agreement.  (*Id.* at ¶¶ 26-30 &

Ex. A-C; *see also id.* at ¶¶ 13, 19-23).  The parties first attempted to resolve

their disputes through rabbinical mediation (*id.* at ¶ 52), but on July 29, 2021,

Defendant served a Demand for Arbitration on Plaintiff (*id.* at ¶ 57 & Ex. K

("Demand")).

**B.    Procedural Background**

**1.    The Petition in State Court, the Removal to this Court, and
the Motion for Remand**

Two weeks after receiving the Demand, on August 13, 2021, Plaintiff filed

the Petition in New York State Supreme Court, New York County, along with an

Order to Show Cause for Emergency Injunctive Relief.  (Petition).[2]  The Petition

sought a stay of the arbitration proceedings pursuant to N.Y. C.P.L.R.

§ 7503(b).  (*Id.*).

---

Plaintiff is sometimes referred to as "Petitioner" and Defendant is sometimes referred to
as "Respondent."

For ease of reference, the Court refers to Plaintiff's brief in support of his motion for
attorneys' fees and costs under 28 U.S.C. § 1447(c) at "Pl. Br." (Dkt. #18); Defendant's
brief in opposition as "Def. Opp." (Dkt. #22); and Plaintiff's reply brief as "Pl. Reply"
(Dkt. #23).  Declarations are cited using the convention "[Name] Decl."

[2]    The Petition is dated August 11, 2021, but the filing date on the state court docket is
August 13, 2021.

The next business day, August 16, 2021, Defendant removed the matter to this Court, claiming jurisdiction pursuant to an arbitration agreement between the parties that was ostensibly governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. §§ 201-208 (the "New York Convention"). (Notice). Plaintiff responded two days later, on August 18, 2021, by filing a letter motion for remand back to the state court pursuant to 28 U.S.C. § 1447(c) and for attorneys' fees under that same provision. (Dkt. #5). The Court ordered Defendant to respond by 10:00 a.m. on August 20, 2021, and scheduled a telephone conference to address Plaintiff's motion to take place later that afternoon. (Dkt. #6).

Defendant responded by letter brief on August 20, 2021. (Dkt. #8). Broadly speaking, Defendant argued that "a contract governing the ownership, management and operations of a company that imports and exports cabinetry is a contract evidencing a transaction 'involving commerce' and therefore a contract embraced by section 2 [of Title 9]," particularly given Fabuwood's dependence on Chinese and Vietnamese companies to supply its cabinets. (*Id.* at 2-3; *see also id.* at 3 ("In any event, even assuming that the 'relationship . . . is entirely between citizens of the United States[,]' the relationship nevertheless falls under the Convention because it 'involves property located abroad, envisages performance . . . abroad,' and has some 'reasonable relation with one or more foreign states.'")). Plaintiff filed a reply brief later that day. (Dkt. #9).

The Court held a telephonic conference on the afternoon of August 20, 2021, at which it heard oral argument on Plaintiff's remand motion. (*See*

3

Minute Entry for August 20, 2021).  The parties submitted post-hearing letter briefs (*see* Dkt. #10 (Defendant), 11 (Plaintiff)), and the Court issued an oral decision granting the motion for remand on August 25, 2021 (*see* Dkt. #12 (remand order), 15 (transcript of oral decision ("Tr."))).[3]

### 2.    The Oral Decision

In the introduction to its decision, the Court made the following observations about the parties' competing applications for removal and remand:

> [L]et me begin my analysis by saying this.  This was not an easy decision.  I think the petitioner thought it might be.  There was more thought to it than perhaps I had originally anticipated.  So I'm glad to have had extra time to think about it.

(Tr. 4).  From there, the Court briefly reviewed the factual background of the litigation before outlining the requirements of the New York Convention, which applies to an arbitration agreement when: (i) there is a written agreement; (ii) the agreement provides for arbitration in the territory of a signatory of the Convention; (iii) the subject of the agreement is commercial; and (iv) the agreement is not entirely domestic in scope.  *See Smith/Enron Cogeneration Ltd. P'ship, Inc.* v. *Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 92 (2d Cir. 1999).

The parties' dispute concerned the fourth prong, and so the Court turned to 9 U.S.C. § 202, which states in relevant part that the Convention does not

---

[3]     The Court understands from the docket of the state court proceeding that a hearing was held on October 6, 2021, during which Justice Joel M. Cohen denied Plaintiff's motion to stay, thus allowing the arbitration to proceed.  (*See* Dkt. #21-2 (transcript)).  A judgment dismissing the Petition and awarding costs to Defendant was issued on October 26, 2021.

apply to agreements "entirely between citizens of the United States … unless [the] relationship [i] involves property located abroad, [ii] envisages performance or enforcement abroad, or [iii] has some other reasonable relation with one or more foreign states."  Ultimately, the Court agreed with Plaintiff that the parties' business relationship "lacks any of the foreign elements contained in Section 202 or any other sufficiently significant foreign interest to implicate the New York Convention."  (Tr. 6; *see also id.* ("As one Court put it, quoting the Fifth Circuit, the true question is whether there is a reasonable connection between the parties' commercial relationship and a foreign state that is independent of the arbitral clause itself." (citation omitted))).

While most of the cases the Court found addressing this issue had focused on the nature of the business relationship and not the agreement at issue, one Fifth Circuit decision found to the contrary.  (Tr. 7 (citing *Soaring Wind Energy, L.L.C.* v. *Catic USA Inc.,* 946 F.3d 742, 752 (5th Cir. 2020) ("We look, therefore, not to the general relationship among the parties but to the foreign character, if any, of the Agreement itself."))).  The Court adopted the majority viewpoint, and concluded "the pertinent legal relationship to be the ownership and operation of a cabinetry company that assembles and sells cabinets in the United States."  (*Id.* at 8).  It found, however, no foreign nexus that would bring the relationship within the ambit of the New York Convention.

To begin, the Court noted that the Shareholders Agreement "does not reference any foreign law, make mention of property located abroad, or discuss the company's operations in foreign countries."  (Tr. 8; *see also id.* at 9 ("Put

somewhat differently, the crux of the legal relationship between the parties, the
ownership and operation of the cabinetry business, does not involve foreign
property because the company does not control any property located outside of
the United States.")).  Relatedly, the Court found no evidence to suggest that
the relationship envisaged performance abroad.  (*Id.* at 9-11 (collecting cases)).
In this regard, the Court rejected Defendant's arguments that references in the
Shareholders Agreement to future potential sales in Canada, or to an as-yet-
unfulfilled agreement in principle to expand to other countries, satisfied this
provision.  (*Id.* at 11).

Finally, the Court considered — and distinguished — a series of cases
cited by Defendant in which federal courts had exercised jurisdiction over
arbitral disputes involving U.S. citizens.  (Tr. 12-13).  Ultimately, the Court
concluded:

> The present dispute, in contrast, involves a
> shareholder's agreement that controls a New York
> business whose only foreign connection is the
> importation of raw materials from Asia for its
> manufacturing operations in New Jersey.  There is no
> indication on the record before me that the company
> itself controls any property located abroad, or that this
> the company envisages performance abroad where, to
> this Court's knowledge, it has made no efforts to expand
> its cabinetry sales or manufacturing of its cabinets
> abroad.  The focus of the relevant relationship is to
> make and sell cabinets in the United States, and this
> Court does not find that the purchase of raw materials
> constitutes the type of reasonable relation with one or
> more foreign states to implicate the New York
> Convention.

(*Id.* at 13).  The Court issued an order remanding the case later that day.  (Dkt.
#12).

6

### 3.    The Motion for Attorneys' Fees and Costs

In the course of resolving the remand motion, the Court spoke briefly

regarding Plaintiff's companion motion for attorneys' fees and costs:

> I understand that another component of your motion
> was a request for attorneys' fees.  I'm not making any
> final decisions on that today, but I would note that, as
> I understood the law, it is discretionary.  I may consider
> a number of things.
>
> Many courts have found that an award is appropriate
> where the removal basis was contrary to overwhelming
> authority.  I understand that.  I'm not sure that I see
> that here.
>
> I guess what I'm saying is, when I initially received the
> motion-to-remand papers, I thought it was a very cut-
> and-dry argument.  Mr. Caruso, through his written
> and oral efforts, made me think much more about the
> matter, and I thought that the arguments or the
> decision was closer than I had originally thought.
>
> That, to me, suggests that perhaps this is not a case
> where attorneys' fees are warranted, but I don't want to
> suggest to you that I have judged the issue entirely.  I
> want you to think about that as we think about going
> forward.

(Tr. 14).  By letter dated September 1, 2021, counsel for Plaintiff advised the

Court of Plaintiff's desire to proceed with an application for attorneys' fees and

costs, and offered a schedule jointly proposed by the parties.  (Dkt. #13).

Pursuant to that schedule, Plaintiff filed his opening brief on September 30,

2021 (Dkt. #17-18); Defendant filed his opposition papers on November 5, 2021

(Dkt. #21-22); and Plaintiff filed his reply brief on November 22, 2021 (Dkt.

#23).

## DISCUSSION

### A.    Applicable Law

A district court may, in its discretion, "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  28 U.S.C. § 1447(c); *see Morgan Guar. Tr. Co. of N.Y.* v. *Republic of Palau*, 971 F.2d 917, 924 (2d Cir. 1992) ("The statute as a whole ... affords a great deal of discretion and flexibility to the district courts in fashioning awards of costs and fees.").  The statute does not require the party seeking costs and expenses to demonstrate the removing party acted in bad faith.  *Sherman* v. *A.J. Pegno Constr. Corp.*, 528 F. Supp. 2d 320, 331 (S.D.N.Y. 2007) (citing *Morgan Guar. Tr. Co.*, 971 F.2d at 923-24).[4]  Rather, "the standard for awarding fees should turn on the reasonableness of the removal.  Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.  Conversely, when an objectively reasonable basis exists, fees should be denied."  *Martin* v. *Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005); *see also id.* at 140 ("The appropriate test for awarding fees under § 1447(c) should recognize

---

[4]    *See also Kuperstein* v. *Hoffman-Laroche, Inc.*, 457 F. Supp. 2d 467, 472 (S.D.N.Y. 2006) (footnotes omitted):

> Assessment of costs and fees against the removing defendants is within the court's discretion and does not require a finding of bad faith or frivolity.  Some courts have chosen to exercise their discretionary power to award costs where "defendants have failed to establish a reasonable basis for removal."  However, the mere fact that the defendant fails to carry his burden does not of itself require an award of costs to the plaintiff.

the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party.").

As a sister court in this District recently explained,

> "A basis for removal is objectively reasonable if the removing party had a colorable argument that removal was proper." *Nguyen* v. *Am. Express Co.*, 282 F. Supp. 3d 677, 683 (S.D.N.Y. 2017) (cleaned up). "Objective reasonableness is evaluated based on the circumstances as of the time that the case was removed." *Williams* v. *Int'l Gun-A-Rama*, 416 F. App'x 97, 99 (2d Cir. 2011) (summary order). In practice, "if lack of jurisdiction was not obvious from the face of the removal petition and no other unusual circumstances obtain, a court cannot conclude that an objectively reasonable basis was lacking." *Allstate Ins. Co.* v. *Credit Suisse Sec. (USA) LLC*, No. 11-CV-2232, 2011 WL 4965150, at *8 (S.D.N.Y. Oct. 19, 2011) (cleaned up).

*Gondolfo* v. *Town of Carmel*, No. 20 Civ. 9060 (CS), 2022 WL 19183, at *2 (S.D.N.Y. Jan. 3, 2022). The Second Circuit has similarly adopted the Seventh Circuit standard that "if clearly established law did not foreclose a defendant's basis for removal, then a district court should not award attorneys' fees," and, further, that "[d]istrict court decisions, let alone conflicting district court decisions, do not render the law clearly established." *Williams* v. *Int'l Gun-A-Rama*, 416 F. App'x 97, 99 (2d Cir. 2011) (summary order) (quoting *Lott* v. *Pfizer, Inc.*, 492 F.3d 789, 793 (7th Cir. 2007)).

## B.   Analysis

Having taken additional time to consider the case law and the parties' arguments, the Court exercises its discretion not to award attorneys' fees or costs to Plaintiff. As suggested by the Court's oral decision, Defendant's argument — while not ultimately successful — was not foreclosed by Second

Circuit precedent.  Indeed, the Court had to consider first whether the relevant "legal relationship" was to be analyzed with reference to the parties or to the agreement at issue, discerning a Circuit split on that point.  (Tr. 6-8).  From there, the Court considered Defendant's arguments based on the language of the Shareholders Agreement and Fabuwood's foreign sources of supply.  (*Id.* at 9-13).  While it is true that the Court did not accept Defendant's arguments for application of the New York Convention, it is also true (as Defendant notes) that the Court distinguished existing cases rather than identified controlling precedent that foreclosed Defendant's arguments.  (*See* Def. Opp. 4-6; *see also id.* at 6 ("No prior case had specifically held, as the Court held here, that mere importation is insufficient to satisfy the statute.  And the Court here drew distinctions — between, for example, importation from a foreign country (held insufficient) and sales in a foreign country (held sufficient) — that no prior case had explicitly drawn.")).

Plaintiff counters that attorneys' fees and costs are warranted because Defendant's arguments "relied on a conscious misrepresentation of precedent." (Pl. Br. 5 (citing *Nomanbhoy* v. *Vahanvaty*, No. 11 Civ. 2456, 2011 WL 6736052, at *5 (N.D. Ill. Dec. 21, 2011)); *see also* Pl. Reply 2).  The Court believes that Defendant's citation to the *Nomanbhoy* case was confusing, but not intentionally misleading.  (Dkt. #10).  The Court is also confident that defense counsel will be more careful in future submissions.

Separately, Plaintiff argues that fees and costs are warranted because Defendant "abused the removal statute."  (Pl. Br. 6).  Again, the Court

10

disagrees.  In particular, the Court cannot agree with Plaintiff that Defendant "baselessly removed the proceeding" while Plaintiff's application for emergent relief was pending.  (*Id.* at 7).  In the Court's estimation, each side's arguments are a matter of perspective — what is appropriate advocacy to one party is sanctionable gamesmanship to the other.  While Plaintiff can criticize Defendant for interrupting Plaintiff's application for a stay in state court, Defendant can criticize Plaintiff just as easily for filing that failed lawsuit in an effort to forestall the arbitration proceeding that Defendant initiated.  In any event, the Court observes that this case was with it for less than two weeks; any delay attributable to the removal was not sufficiently impactful to either side to warrant the imposition of attorneys' fees or costs.

## CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's motion for attorneys' fees and costs pursuant to 28 U.S.C. § 1447(c).  The Clerk of Court is directed to terminate the motion at docket entry 17.

SO ORDERED.

Dated:      July 25, 2022
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge